IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: BOY SCOUTS OF AMERICA and DELAWARE BSA, LLC, | : | Chapter 11 |
| | : | |
| | : | Case No. 20-10343 (LSS) |
| Debtors. | : | (Jointly Administered) |
| _____ | : | |
| CENTURY INDEMNITY COMPANY, | : | |
| WESTCHESTER FIRE INSURANCE | : | |
| COMPANY, and WESTCHESTER SURPLUS | : | |
| LINES INSURANCE COMPANY, | : | Civ. No. 20-798-RGA |
| | : | |
| Appellants, | : | |
| v. | : | |
| | : | |
| BOY SCOUTS OF AMERICA and | : | |
| DELAWARE BSA, LLC, | : | |
| | : | |
| Appellees. | : | |

## MEMORANDUM OPINION

Jonathan Hacker, O'Melveny & Myers LLP, Washington, D.C.; Tancred Schiavoni, Janine Panchok-Berry, Andrew Kirschenbaum, O'Melveny & Myers LLP, New York, New York; Stamatios Stamoulis, Stamoulis & Weinblatt LLC, Wilmington, Delaware, attorneys for appellants, Century Indemnity Company, Westchester Fire Insurance Company, and Westchester Surplus Lines Insurance Company.

Derek C. Abbott, Andrew R. Remming, Eric W. Moats, Morris Nichols Arsht & Tunnell LLP, Wilmington, Delaware, attorneys for appellees, the Boy Scouts of America and Delaware BSA, LLC.

James W. Ducayet, Robert N. Hochman, Sidley Austin LLP, Chicago, Illinois; Christopher P. Simon, Cross & Simon LLC, Wilmington, Delaware, attorneys for Sidley Austin LLP.

May 6, 2021

/s/ Richard G. Andrews

**ANDREWS, UNITED STATES DISTRICT JUDGE:**

Appellants (collectively, "Century") have appealed the Bankruptcy Court's June 2, 2020 order (D.I. 1-2)[1] ("Retention Order") authorizing debtors Boy Scouts of America and Delaware BSA (collectively, "BSA" or the "Debtors") to retain the Sidley law firm as their attorneys, *nunc pro tunc* to petition date, pursuant to section 327(a) of the Bankruptcy Code, for the reasons set forth in the Bankruptcy Court's May 29, 2020 Bench Ruling (D.I. 1-1) ("Ruling"). For the reasons set forth below, the Retention Order is affirmed.

# I.    BACKGROUND

## A.    The Parties and the Service Level Agreement

The findings of fact made by the Bankruptcy Court are unchallenged on appeal unless otherwise noted. (*See* Ruling at 1-2). Appellants are subsidiaries or affiliates of Chubb Limited ("Chubb"). Over the years, Sidley's Insurance and Financial Services Group has represented Chubb and/or its predecessors and subsidiaries on various insurance matters, including both specific arbitration proceedings and general counseling matters. (Ruling at 1). As a condition to accepting engagements from Chubb for Century, Sidley agreed to abide by the companies' Service Level Agreement ("SLA") for law firms. (APP1234-1257). Generally, the SLA is Chubb's standard agreement by which it engages counsel. (Ruling at 1). Chubb has chosen not to negotiate separate engagement letters with each law firm it hires. The SLA with Chubb is the operative agreement between Sidley and Century with respect to the Sidley engagement on the

---

[1] The docket of the chapter 11 cases, captioned *In re Boy Scouts of America*, No. 20-10343-LSS (Bankr. D. Del.), is cited herein as "Bankr. D.I. __." The Appendix (D.I. 24) to Appellants' opening brief is cited herein as "APP__," and Appellees' Supplemental Appendix (D.I. 29) is cited herein as "SA__."

reinsurance matters at issue in this appeal. (Ruling at 1).

Chubb's affiliate Century issued multiple insurance policies to BSA. Century retained Sidley in connection with two reinsurance[2] disputes, and partner William Sneed led the engagements. BSA was not a party to either of these reinsurance disputes. The first of these disputes arose under reinsurance agreements between Century, as insurer, and reinsurers following payments that had been made under Century's BSA policies. Century hired Sidley on October 5, 2018, in connection with Century's efforts to obtain reinsurance from Lloyd's of London for claims Century paid or in the future would pay to BSA under insurance policies Century issued to BSA. (APP0800, Schwartz Decl. ¶ 4). Joshua Schwartz was Sidley's primary point of contact at Century for the Lloyd's matter. (APP0776, Sneed Decl. ¶ 3). Sidley was engaged to review the work of previous counsel, which had resulted in an arbitration award adverse to Century. (*Id*. ¶ 4). The arbitration proceeding is the subject of a decision of the United States District Court for the District of Massachusetts. *See Certain Underwriters at Lloyd's, London v. Century Indemnity Company*, 2020 WL 1083360 (D. Mass. Mar. 6, 2020). In the second matter, Century retained Sidley in August 2019 in connection with Century's efforts to obtain reinsurance from another insurer for claims Century paid or in the future would pay to BSA under insurance policies Century issued to BSA.

On October 3, 2018 – shortly before Sidley took on its first BSA-specific engagement for Century – Sidley's restructuring group was hired by BSA to render restructuring planning, advice, and implementation. Sidley's engagement letter with BSA provided that Sidley "will not [be] advising [BSA] on insurance coverage issues." (APP651). Prior to BSA's retention of

---

[2] Reinsurance is insurance for insurers – an insurer transfers to one or more reinsurers some or all of the risk of the policies it has issued to its own insured, reducing the likelihood the insurer will be forced to bear a large insurance liability on its own. (*See* APP1020 at 130:19-25).

Sidley in connection with its restructuring, BSA had already retained separate counsel, Haynes and Boone, to serve as dedicated insurance counsel. (*See* SA9, Boelter Decl. ¶¶ 7-8; APP564-76). The Bankruptcy Court later approved, without objection, Haynes and Boone's retention by BSA as special insurance counsel. (Bankr. D.I. 463).

Century and Sidley dispute the nature of the circumstances and communications over the course of several months which resulted in a breakdown in their relationship.[3] It is undisputed, however, that Sidley did not obtain from Century a waiver of any conflict with respect to its concurrent representation of Century and BSA. On January 16, 2020, Sidley wrote Chubb stating its intention to withdraw from all of its pending representations of Chubb/Century and set out a timeframe for the process. (APP000848; APP000850-52). The last action taken to withdraw from any Chubb/Century matter was either on February 20, 2020 or February 24, 2020.

The 2015 SLA provides that if Century and Sidley are unable to resolve any dispute with respect to a matter handled by the law firm, the "sole means" for redressing that dispute shall be an arbitration administered by the American Arbitration Association in accordance with its

---

[3] Sidley contends that Century was aware of the Sidley's representation of BSA as early as December 13, 2018 (AP0796-98) and that Sidley communicated to Century in later discussions its position that representation of an insurer with respect to collecting reinsurance due following payment to an insured does not constitute adversity to the insured. (APP0784). Thus, in Sidley's view, it could continue to represent Century against Lloyd's Underwriters on the reinsurance dispute without conflict. (*Id.*) Notwithstanding these communications, Sidley contends that the attorney-client relationship had broken down by January 3, 2020, when Century sent a letter notifying Sidley that Century's outside ethics counsel could not "rule out" a conflict or potential conflict. Because the letter from Century also accused Sidley of "shocking and offensive behavior," Sidley determined that it needed to withdraw from representing Century due to the breakdown of the attorney-client relationship. (*See* APP0786-87).

Conversely, Century contends that it did not learn about the concurrent representation until on or about November 3, 2019 (APP0803), that Sidley refused to provide any support for its position that no conflict existed (APP0838-43), and that Sidley withdrew from its representation of Century and Chubb without Century's consent, after Century refused to consent to the dual representation, and in order to pursue the "more lucrative" BSA representation (APP0835-37).

Commercial Arbitration rules.  A few weeks after Sidley's withdrawal from its representations of Chubb/Century, Century notified Sidley that it would be invoking its right to arbitrate its dispute with Sidley.  (APP881).

In the meantime, BSA filed its bankruptcy petition on February 18, 2020 ("Petition Date").  Century's insurance policies with BSA are assets of the BSA bankruptcy estate.  Those policies include the same Century/BSA insurance policies for which Century sought to collect reinsurance from Lloyd's of London and the second reinsurer.

### B.     The Retention Application

On March 17, 2020, BSA filed an application (APP428-42) ("Retention Application") seeking to retain Sidley as counsel pursuant to § 327(a) of the Bankruptcy Code, which authorizes a debtor to retain lawyers and other professionals only insofar as they "do not hold or represent an interest adverse to the estate" and "are disinterested persons."  11 U.S.C. § 327(a).  The Retention Application sought approval of Sidley's retention retroactive to the Petition Date.

Century filed the sole objection to Sidley's Retention Application.  It argued that Sidley's retention did not meet the requirements of section 327, because Sidley's retention would violate Rule 1.7 of the ABA Model Rules of Professional Conduct ("Rules").  Rule 1.7 governs conflicts between a law firm's concurrent representations. The concurrent representation here is that Sidley would be representing one current client – BSA – against another current client – Century.

Sidley, on the other hand, argued that Rule 1.7 was not relevant to its retention.  According to Sidley, Century was a former client, not a current client.  Moreover, under Rule 1.9, which governs obligations to former clients, Sidley argued that it did not need a waiver from Century because Sidley's representation of BSA in its restructuring was not substantially related to its previous representation of Century in reinsurance matters.  Finally, Sidley argued that it was never adverse to Chubb/Century, even when Century was a client, because Haynes and

Boone is BSA's insurance coverage counsel in connection with the restructuring.

BSA argued that it would be severely prejudiced if Sidley's retention was denied. At that time, Sidley had performed extensive work over eighteen months preparing BSA for the chapter 11 filing and in representing BSA pre- and post-petition in negotiations with relevant constituencies. Replacing Sidley, the Debtors argued, would not only delay the restructuring but impose significant additional expense on BSA.

### C. The Ruling, Retention Order, and Appeal

The Bankruptcy Court heard testimony from six fact witnesses and two experts. It determined section 327 did not apply to preclude Sidley's retention, because section 327's use of present-tense language means it only addresses current conflicts. Sidley had terminated its representation of Chubb/Century before seeking retention, and the Bankruptcy Court held that Sidley possessed no interest adverse to BSA that would preclude its retention. (*See* D.I. 1-1 at 3-6).

The Bankruptcy Court undertook a careful analysis of the obligations Sidley owed to Century under Rules 1.7 and 1.9, and held that if such obligations did not create an interest adverse to the estate, they were irrelevant for the purposes of section 327. (*See id*. at 6-14). The Bankruptcy Court made no finding as to whether an ethical rule had been violated but concluded that the Rules did not support depriving BSA of its chosen counsel. The Bankruptcy Court found, "[F]rom the outset and as reflected in Sidley's engagement letter with BSA, Sidley carved out from its engagement any advice on insurance coverage issues." (*Id.* at 11). The Bankruptcy Court found, "Haynes & Boone has taken the lead on all [insurance] coverage-related matters, [and] is the firm charged with both analyzing BSA's insurance policies and negotiating with its insurers." (*Id.* at 11). Given Haynes and Boone's involvement with the restructuring "since its inception," the Bankruptcy Court determined that Haynes and Boone was well-positioned as

"conflicts counsel" to address all matters in which Sidley might be adverse to Century (in other words, matters concerning the "substantive treatment of BSA's insurance policies with Century, claims thereunder, proceeds therefrom or that otherwise implicate insurance coverage"). (*Id.* at 11-14). Finally, the Bankruptcy Court found that "significant prejudice … would befall BSA if it [were] forced to replace Sidley." (*Id.* at 14).

Century filed a timely notice of appeal with respect to the Retention Order. (D.I. 1). The merits of the appeal have been fully briefed (D.I. 23, 28, 31), and, on February 9, 2021, I heard oral argument. (D.I. 33).

## II.    JURISDICTION AND STANDARD OF REVIEW

Appeals from the Bankruptcy Court to this Court are governed by 28 U.S.C. § 158. District courts have mandatory jurisdiction to hear appeals "from final judgments, orders, and decrees." 28 U.S.C. § 158(a)(1). The Retention Order is a final order. *See In re Pillowtex, Inc.*, 304 F.3d 246, 250 (3d Cir. 2002).

The issues on appeal are (1) whether the Bankruptcy Court abused its discretion in approving BSA's retention of Sidley under § 327(a), and (2) whether the Bankruptcy Court abused its discretion in denying Century's request to disqualify Sidley for ethical violations under the Rules of Professional Conduct.

I review the Bankruptcy Court's decision to approve Sidley's application for employment under § 327(a) for an abuse of discretion. *In re Marvel Ent. Grp., Inc.,* 140 F.3d 463, 470 (3d Cir. 1998); *In re Decade, S.A.C., LLC*, 2020 WL 564903, at *4 (D. Del. Feb. 5, 2020). "An abuse of discretion exists where the [bankruptcy] court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *Decade*, 2020 WL 564903, at *4 (quoting *Marvel*, 140 F.3d at 470). Accordingly, while legal conclusions are reviewed *de novo*, I review the Bankruptcy Court's findings of fact only for clear

error.  *Id.*

I review the Bankruptcy Court's decision to deny a motion to disqualify under the ethics rules for an abuse of discretion, with factual findings reviewed for clear error and the underlying legal question of whether counsel violated a particular rule of professional conduct reviewed *de novo*.  *Jackson v. Rohm & Haas Co.*, 366 F. App'x 342, 346 (3d Cir. 2010).  A finding of fact is clearly erroneous "only if it is completely devoid of a credible evidentiary basis or bears no rational relationship to the supporting data."  *Advance Cap. Partners, LLC v. Rossmann*, 495 F. App'x 235, 237 (3d Cir. 2012) (quotation omitted).

## III.    PARTIES' CONTENTIONS

Century argues that, as counsel in the reinsurance matters, Sidley was privy to confidential information about insurance coverage for BSA, including "privileged information concerning the disputes between Century and BSA over its insurance coverage, Century's legal analysis of BSA's claims, and Century's legal strategies and defenses in these matters."  (D.I. 23 at 5-6).  Century argues that Sidley represented both parties on the Petition Date, and that the concurrent representation presented an actual conflict of interest.  In holding that section 327 addresses only current conflicts, Century argues that the Bankruptcy Court erred in evaluating the existence of conflicts on the date retention was approved, as opposed to the date on which the retention was effective.  In addition to the requirements set forth in section 327, Century argues that the Bankruptcy Code further requires the application of all the Rules of Professional Conduct.  Century contends that the Bankruptcy Court failed to address its arguments that Sidley violated (and continues to violate) its ethical obligations to Century under Rule 1.7.  Century further argues that even if Rule 1.9 applies, Sidley is in violation of its duties to Century as a former client and should have been disqualified from retention on this basis as well.  (*Id*. at 31-44).  Finally, Century argues that Sidley's violations of its ethical obligations cannot be cured by

an ethical screen or the use of Haynes and Boone as dedicated insurance counsel. (*Id*. at 44-48).

According to Sidley, the Bankruptcy Court properly concluded that its retention satisfied the requirements of section 327 – as it did not hold or represent any interest adverse to the estate and is disinterested – and that Century's attempt to disqualify Sidley based on purported ethical violations was not an abuse of discretion under these facts. (D.I. 28 at 20-29). Sidley argues that the Bankruptcy Court made no finding as to whether an ethical rule had been violated but concluded that the Rules of Professional Conduct did not support depriving BSA of its chosen counsel. Sidley argues it was not an abuse of discretion for the Bankruptcy Court to decline to disqualify Sidley irrespective of any ethical violations but that, to the extent I reach the issue, Century failed to establish any ethical violations. (*Id*. at 29-38). Sidley argues that Century should be treated as a former client and its representation of BSA does not violate Rule 1.9. (*Id*. at 38-48). If Century's relationship with Sidley is evaluated under the present client standard, Sidley argues that its representation of BSA did not violate Rule 1.7. (*Id.* at 48-53).

## IV.    ANALYSIS

### A.    The Bankruptcy Court Did Not Abuse its Discretion in Approving Sidley's Retention Under Section 327

As the Third Circuit has instructed, the starting point for professional retention is section 327(a), which creates a two-part test. To be retained, counsel (i) "must not hold or represent an interest adverse to the estate," and (ii) "must be a disinterested person." *In re BH & P, Inc.,* 949 F.2d 1300, 1314 (3d Cir. 1991). A "disinterested person" is defined in relevant part as someone without "an interest materially adverse to the interest of the estate." 11 U.S.C. § 101(14)(C). [4]

---

[4] To be disinterested, an attorney also cannot "have an interest materially adverse to the interest … of any class of creditors or equity security holders." 11 U.S.C. § 101(14)(C). There has been no argument here that Sidley possessed any such interest, and Century is neither a creditor nor an equity security holder.

The Bankruptcy Court noted several principles which guide the analysis. First, "The purpose behind these requirements is to ensure effective representing of the estates; in other words, it is to ensure that the professional is able to act in the best interest of the estates and can competently and vigorously represent the trustee or debtor-in-possession." (Ruling at 3-4). *See In re Jade Mgmt. Servs*., 386 F. App'x 145, 148-50 (3d Cir. 2010); *In re AroChem Corp*., 176 F.3d 610, 621 (2d Cir. 1999). The Third Circuit has therefore instructed that a professional holds a prohibited "adverse interest" where that professional holds or represents interests in competition with the debtor that would actually (as opposed to speculatively) impair its service as an estate fiduciary. *See In re First Jersey Sec., Inc*., 180 F.3d 504, 509 (3d Cir. 1999); *Marvel*, 140 F.3d at 477. Importantly, section 327 "does not seek to vindicate the rights of non-debtor entities," and consistent with the plain language of the statute, a court must assess "the factual scenario in front of it from the perspective of the estate." (Ruling at 4-5). As the Bankruptcy Court noted, Third Circuit cases interpreting section 327 bear out this perspective in that each evaluates the facts from the perspective of the estate. (*See* Ruling at 4-5 (citing *In re Pillowtex, Inc*., 304 F.3d 246, 255 (3d Cir. 2002); *Marvel*, 140 F.3d at 477; and *BH & P,* 949 F.2d at 1315)).

The Bankruptcy Court had considerable discretion in approving Sidley's retention under the standards of section 327 in light of the specific facts and circumstances of the case. *Marvel*, 140 F.3d at 477; *Jade Mgmt. Servs*., 386 F. App'x at 148. The burden of showing that Sidley's retention violated section 327 rested with Century. *See In re Art Van Furniture*, 617 B.R. 509, 515 & n.34 (Bankr. D. Del. 2020). Century's burden was substantial. Disqualification is mandated only where there is "an actual conflict" with the interests of the debtor's estate, and a "court may not disqualify an attorney on the appearance of conflict alone." *Marvel*, 140 F.3d at 476.

The Bankruptcy Court carefully considered the evidence in light of the foregoing principles and concluded that it was "in no way convinced that Sidley generally cannot effectively represent BSA." (Ruling at 5). This is the primary basis of the Bankruptcy Court's Ruling, which Century's briefing largely fails to address. Rather, the arguments raised by Century on appeal simply (and understandably) concern its own interests – namely that Sidley's representation of BSA as restructuring counsel will undermine Century's position as one of BSA's liability insurers. (*See* D.I. 23 at 28, 32). I agree with the Bankruptcy Court that even if the evidence were sufficient to establish the violation of some rule of professional conduct, it would not undermine BSA's interest or Sidley's ability to vigorously represent BSA. Century's arguments about its own interests are not supported by the case law governing retention of bankruptcy counsel.

Century contends that the Bankruptcy Court's analysis "starts from the erroneous premise" that section 327 has no application here because it is written in the present tense and thus applies only to current conflicts. (D.I. 23 at 26-27 (citing Ruling at 5-6)). The provision indeed consistently uses present-tense language, including "hold," "represent," and "are disinterested." The Supreme Court has instructed that "Congress' use of a verb tense is significant in construing statutes." *United States v. Wilson*, 503 U.S. 329, 333 (1992). Other courts have read the present-tense language to require a present conflict inhibiting vigorous representation of the estate. *See, e.g., In re Ampal-Am. Israel Corp.*, 691 F. App'x 12, 15 (2d Cir. 2017) ("counsel will be disqualified under section 327(a) only if it presently holds or represents an interest [adverse] to the estate, notwithstanding any interests it may have held or represented in the past" (emphasis deleted) (quoting *AroChem*, 176 F.3d at 623)); *In re Muma Servs., Inc.*, 286 B.R. 583, 591 (Bankr. D. Del. 2002). Based on the foregoing, the Bankruptcy Court concluded that "section 327's prohibition against representing an adverse interest does not

work to prohibit Sidley's retention because of its previous representation of Chubb," reasoning:

> Whether the attorney-client relationship ended as Sidley asserts with its January 16, 2020 letter to Chubb, or as Century asserts several days after the bankruptcy petition was filed is of no consequence. For purposes of section 327, the attorney-client relationship has ended. I note that Chubb has not cited any case law to the contrary. Therefore I conclude that Sidley meets the two-part test of section 327 in that it does not hold or represent an interest adverse to the estate and it is disinterested.

(Ruling at 6).

Century asserts that the Bankruptcy Court erred in concluding that Sidley did not "hold or represent" an adverse interest because the Bankruptcy Court wrongly focused on the date of its Ruling as opposed the date Sidley was retained – *i.e.*, the February 18, 2020 Petition Date. (D.I. 23 at 26-27). Sidley sought and was granted retention *nunc pro tunc* to the Petition Date, which Century argues "is the relevant date under the bankruptcy court's own analysis." (*Id.* at 29). Sidley did not formally withdraw from its Chubb/Century representations until several days after the Petition Date – with the last action taken on either February 20 or February 24, 2020.[5] Century thus argues that Sidley represented an adverse interest on the Petition Date and the Bankruptcy Court lacked discretion to approve Sidley's retention under these circumstances. (*Id.* at 28).

Sidley counters that it communicated its intent to withdraw to Century on January 16, 2020, over a month before BSA filed its Chapter 11 petition; that Century waited two weeks to acknowledge Sidley's withdrawal; and that when Century finally responded, it declared that it did not consent. (APP000848; APP000850-52; APP000854-56). Sidley was unable to complete the withdrawal process until after the Petition Date, Sidley argues, as a result of Century's own

---

[5] Ruling at 2; APP0805, APP0869-78 (Sidley emails arbitrators to withdraw from two matters on February 20, 2020 and calls the arbitrators in a third matter to withdraw on February 24, 2020); APP0965, 5/4/20 Hr'g Tr. at 75:14–18 (Mr. Sneed's testimony confirming that he notified arbitrators of his withdrawal "during the week of February 17th of this year").

delay and refusal to accept the withdrawal.  (D.I. 28 at 23-24 n.8 (citing APP001111, Tr. 221:25)).  Sidley further argues that any short period following the Petition Date where Sidley continued to represent Century did not matter because Sidley's representation of Century in reinsurance collections matters, even if still technically active on the Petition Date, was in no way adverse to BSA.  (D.I. 28 at 23-24).  "BSA was not a party to any of those disputes, and the outcome of the reinsurance collections actions would have no impact on BSA, much less a negative impact; BSA had already received payment under its insurance policies with Century." (*Id.*)  Moreover, Sidley argues, "any insurance issues have been (and under the Bankruptcy Court's order, would continue to be) the province of Haynes and Boone.  So any concern that BSA's interests will not be vigorously advanced in light of any surviving obligation Sidley might owe to Century has been fully addressed."  (*Id*. at 25).

Even if Century is correct that the relevant date for purposes of the Bankruptcy Court's analysis is the February 18 Petition Date – or that Sidley's retention should have been approved only as of the date that all conflicts were cleared (on either February 20 or 24) – I disagree that the Bankruptcy Court lacked any discretion to approve the retention under these circumstances and that wholesale reversal of the Retention Order is required.  The Bankruptcy Court had considerable discretion in approving Sidley's retention under the standards of section 327, *Marvel*, 140 F.3d at 477, which is a "fact-intensive" inquiry, *Art Van Furniture,* 617 B.R. at 514.  The Bankruptcy Court found that Sidley satisfied section 327 and neither held nor represented an interest adverse to the estate and was disinterested.  I see no abuse of discretion.  The record supports the finding that intent to withdraw was communicated a full month prior to the Petition Date.  Any concern presented by counsel's short delay in formally effecting its withdrawal was offset by the presence of Haynes and Boone, as BSA's exclusive insurance counsel, and outweighed by "unrefuted" evidence that "significant prejudice … would befall BSA if it [were]

forced to replace Sidley, which has been working with BSA for almost 18 months." (Ruling at 14).

The Bankruptcy Court found, "from the outset" of its retention by BSA, "Sidley carved out from its engagement any advice on insurance coverage issues." (*Id.* at 11). The Bankruptcy Court found, "Haynes & Boone has taken the lead on all [insurance] coverage-related matters, [and] is the firm charged with both analyzing BSA's insurance policies and negotiating with its insurers." (*Id.*) Haynes and Boone also "drafted the portions of BSA's placeholder plan of reorganization pertaining to insurance neutrality." (*Id.*) Haynes and Boone "was involved from the outset of the restructuring negotiations and initiated substantive discussions with BSA's insurers, including Century." (*Id.*) Given Haynes and Boone's involvement with the restructuring "since its inception," the Bankruptcy Court determined that it was well-positioned as "conflicts counsel" to address all matters in which Sidley might be adverse to Century. The Bankruptcy Court's analysis is consistent with case law. *See, e.g., In re Relativity Media, LLC*, 2018 WL 3769967, at *5-6 (Bankr. S.D.N.Y. July 6, 2018) (approving debtor's retention of law firm subject to debtor retaining separate conflicts counsel to address disputes with law firm's client where law firm was in process of withdrawing from representation of that client); *In re Wash. Mut., Inc.*, 442 B.R. 314, 327 (Bankr. D. Del. 2011) ("in most cases the use of conflicts counsel solves the problem").

The record also supports the Bankruptcy Court's finding that significant prejudice would result to BSA if it were deprived of its choice of counsel. Among other things, Sidley had performed extensive work to prepare BSA for bankruptcy pre- and post-petition, and had become intimately familiar with BSA's mission, culture, complex structure, and the unique challenges presented by the bankruptcy. (*See* SA004-05, Whittman Decl. ¶¶ 9-10). Sidley had formed ongoing relationships with representatives of abuse survivors, the future claimants'

representative, Local Councils, and other constituents, and was closely involved with negotiations with key stakeholders. (*Id*. at ¶ 9). The record supports a finding that displacing Sidley as restructuring counsel, and engaging replacement counsel to catch up on such knowledge, would be highly detrimental to BSA and its reorganization. (*Id*. at ¶¶ 9-10)

The purpose of section 327 is to protect the interests of the Debtors' estate. That Century fails to describe any situation in which Sidley may have been unable to take actions necessary to zealously represent BSA's interests in the bankruptcy is unsurprising in light of BSA's retention of Haynes and Boone as special insurance counsel. Based on the facts and circumstances of this case, I find no abuse of discretion in the Bankruptcy Court's conclusion that Sidley held no adverse interest at the time that its retention was approved and no basis to conclude that allowing Sidley to proceed as counsel will undermine the interests of BSA's estate.

**B.     The Bankruptcy Court Did Not Abuse its Discretion in Rejecting Century's Attempt to Disqualify Sidley Based on Violations of the Rules of Professional Conduct**

Rather than address the primary basis of the Bankruptcy Court's ruling, Century argues that the Bankruptcy Court should have disqualified Sidley based on what Century describes as obvious and intractable violations of Sidley's ethical obligations to Century. Century argues that in failing to exercise its discretion to disqualify Sidley, the Bankruptcy Court either failed to apply or misapplied Rules 1.7 and 1.9.

As an initial matter, the Bankruptcy Court did consider Sidley's ethical obligations as part of its analysis. After finding that Sidley met the two-part test of section 327, the Bankruptcy Court noted that was not the end of the inquiry. "[T]he Rules of Professional Responsibility are not irrelevant to a retention application." (Ruling at 6). "There are some decisions in which courts have denied retention because of a professional's violation of its ethical responsibilities that do not implicate section 327." (*Id*.) "These courts generally rely on the court's ability to

monitor the conduct of the attorneys practicing before it or note an impact on the integrity of the bankruptcy process." (*Id.* (citing *In re Universal Building Products*, 486 B.R. 650 (Bankr. D. Del. 2010) (denying the creditors' committee's application to retain a law firm that had violated the rules of professional conduct in soliciting committee members))).

The Bankruptcy Court had "wide discretion" with regard to disqualification. *TQ Delta, LLC v. 2Wire, Inc.*, 2016 WL 5402180, at *6 (D. Del. Sept. 26, 2016). The Third Circuit has made clear that disqualification of counsel is an "extreme remedy." *Jackson*, 366 F. App'x at 347. "In the Third Circuit, and under this court's precedent, whether disqualification is appropriate depends on the facts of the case and is never automatic." *Bos. Sci. Corp. v. Johnson & Johnson Inc.*, 647 F. Supp. 2d 369, 374 n.7 (D. Del. 2009). Courts approach motions to disqualify with "'cautious scrutiny,' mindful of a litigant's right to the counsel of its choice." *Regalo Int'l, LLC v. Munchkin, Inc.,* 211 F. Supp. 3d 682, 687 (D. Del. 2016); *see also Macheca Transp. Co. v. Phila. Indem. Co.,* 463 F.3d 827, 833 (8th Cir. 2006) ("A party's right to select its own counsel is an important public right and a vital freedom that should be preserved; the extreme measure of disqualifying a party's counsel of choice should be imposed only when absolutely necessary."). It was Century's burden "to show clearly that continued representation would be impermissible." *TQ Delta*, 2016 WL 5402180, at *2; *see also In re Onejet, Inc.*, 614 B.R. 522, 530-31 (Bankr. W.D. Pa. 2020) ("The burden is an exceptionally heavy one as motions to disqualify are viewed with disfavor within our Circuit because of the potential for abuse as a litigation tactic.").

Century argued that Sidley's continued representation of BSA would be impermissible under Rule 1.7, which prevents an attorney from representing one current client against another current client absent a written waiver. The comments to Rule 1.7 make clear that "a lawyer may not act as an advocate in one matter against a person the lawyer represents in some other matter,

16

even when the matters are wholly unrelated." As the Bankruptcy Court explained, "Rule 1.7 reflects the complete and undivided loyalty an attorney owes to its client; a lawyer can never be adverse to a current client." (Ruling at 7). Century argues, relying on the so-called "hot potato" doctrine, that the current-client standard of Rule 1.7 applies here. This "hot potato" doctrine — which the Third Circuit has never adopted, *see Sonos, Inc. v. D & M Holdings Inc*., 2015 WL 5277194, at *3 n.1 (D. Del. Sept. 9, 2015) — prevents a law firm from dropping a client in order to avoid a conflict with another, more lucrative client. According to Century, the concurrent conflict principle of Rule 1.7 applies even after a firm has terminated a client and "bars a firm from eliminating a concurrent conflict by unilaterally dropping a client, as Sidley did here." (*Id*.) Century argues that Sidley's actions here violated, and continue to violate, its continuing duty to Chubb/Century by virtue of its years-long representation of Chubb and its related entities, and Sidley should have been disqualified on this basis. (*Id*.)

Century further argued that Sidley's representation of BSA would be impermissible under Rule 1.9. As the Bankruptcy Court explained, Rule 1.9 governs a lawyer's duties to a former client, and "provides that a lawyer cannot represent a party against a former client in the 'same or substantially related matter in which that person's interests are materially adverse to the interests of the former client.'" (Ruling at 7). Century argues that Sidley's "current, actual conflict between its duties to BSA and its duties to Chubb[] requir[ed] per se disqualification under Rule 1.9." (D.I. 23 at 44).

Contrary to Century's suggestion (*id*. at 23-24), the Bankruptcy Court made no finding as to whether an ethical rule had been violated. Rather, the Bankruptcy Court concluded that the Rules of Professional Conduct did not support depriving BSA of its chosen counsel. (Ruling at 11-14). The Bankruptcy Court observed that the "reinsurance litigation could be 'substantially related' to at least some aspects of the [BSA]'s bankruptcy case," but concluded that any issues

in that regard would be resolved by the presence of Haynes and Boone as "conflicts counsel." (Ruling at 10-12). The Bankruptcy Court did not reach the ultimate issue of whether Sidley's representation of BSA was in fact substantially related to the prior reinsurance collections disputes. (*See id*.) As Sidley points out, this is underscored by the Bankruptcy Court noting that the record showed that Sidley's work on the reinsurance matters involved receipt only of "information relevant to the BSA bankruptcy" (*id*. at 10-11)—which is not the standard under Rule 1.9. Under Rule 1.9, two matters are "substantially related" where confidential information received would "materially advance the client's position in the subsequent matter." *See* ABA Model Rule 1.9 cmt. 3. The Bankruptcy Court made no such finding. Rather, exercising the discretion afforded to it, and recognizing, "Disqualification is never automatic," the Bankruptcy Court held that it would not disqualify Sidley from representing BSA even if it had violated its ethical obligations to Century.

The Ruling is consistent with case law. As the Bankruptcy Court explained, there is an "overwhelming body of caselaw (including in this district) in which courts deny disqualification motions in the face of what appear to be obvious conflicts." (Ruling at 13 & n.15 (collecting authority)). Those decisions include cases where courts find violations of the very ethical rules Century invokes here. *See, e.g., TQ Delta*, 2016 WL 5402180, at *6-7 (denying motion for disqualification despite violation of Rule 1.9); *Bos. Sci. Corp.*, 647 F. Supp. 2d at 374-75 ("[counsel's] violation of Rule 1.7 notwithstanding, the court concludes that disqualification is not the appropriate remedy under the circumstances"); *End of Rd. Tr. v. Terex Corp*., 2002 WL 242464, at *2-3 (D. Del. Feb. 20, 2002) (denying motion for disqualification despite admitted violation of Rule 1.7); *Wyeth v. Abbott Labs.*, 692 F. Supp. 2d 453, 458-60 (D. N.J. 2010) (denying motion for disqualification even though there was "no dispute" that counsel violated Rule 1.7); *cf. Elonex I.P. Holdings, Ltd. v. Apple Computer, Inc*., 142 F. Supp. 2d 579, 583 (D.

Del. 2001) (holding that even if Rule 1.7 were violated, disqualification would not have been warranted). In doing so, courts routinely consider the prejudice that could result to a client – here BSA – from being dispossessed of its chosen counsel, including as a result of the complexity of the matter, nature and degree of chosen counsel's involvement, and the costs to obtain new counsel. *See, e.g., TQ Delta*, 2016 WL 5402180, at *7; *Wyeth*, 692 F. Supp. 2d at 460; *End of Rd. Tr.*, 2002 WL 242464, at *3; *Elonex*, 142 F. Supp. 2d at 584..

Applying this principle, the Bankruptcy Court found that the evidence was "unrefuted" that "significant prejudice … would befall BSA if it is forced to replace Sidley, which has been working with BSA for almost 18 months." (Ruling at 14). The finding is supported by the record. Had Sidley's retention been denied, BSA would be required to spend significant time selecting new counsel, educating new counsel about the history of its organization and its financial struggles, and bringing new counsel up to speed on the details of the restructuring (the first involving a congressionally chartered non-profit corporation), including pleadings and other documents and the myriad of complex legal issues at play. (SA004-05, Whittman Decl. ¶ 9). Replacement counsel would have needed to familiarize itself not only with BSA's non-profit operations, financial affairs, abuse claims history, and organizational structure, but also the interests and legal positions of the other stakeholders in the restructuring. (*Id.*) The resulting delay to the bankruptcy proceeding would have significantly prejudiced BSA – precluding an efficient exit from bankruptcy vital to preserving its mission. Hiring new counsel would have been expensive for BSA, including compensating new counsel for the time spent to acquire the knowledge that Sidley had already obtained. (*Id.* ¶ 10). Such financial harm would prejudice any debtor in the midst of a restructuring, but the impact on BSA, a non-profit, would have been particularly destructive due to the continuing COVID-19 pandemic, which had already significantly impaired BSA's financial position and general operations. (SA003-04, Whittman

Dec. ¶ 7).  Finally, the costs would have further depleted the funds available to abuse survivors.  As the Bankruptcy Court noted, all of this is undisputed.  (Ruling at 14).

Courts have denied motions to disqualify under similar – and in some cases, less dire – circumstances.  *See, e.g., TQ Delta*, 2016 WL 5402180, at *7 (noting that counsel's "extensive familiarity with the factual and legal issues in th[e] complex … case cannot be overstated," if counsel were disqualified, the litigant "would be prejudiced beyond mere inconvenience," and "[r]eplacing [counsel] and getting new counsel up to speed[] would come at a substantial cost – in terms of both time and money");  *Wyeth*, 692 F. Supp. 2d at 460 ("depriving [client] of its counsel of choice deprives [it] of [counsel]'s depth of experience and expertise," and "if [client] were required to obtain new counsel, there would likely be some delay in this litigation as well as certain additional costs incurred by [client] while new counsel familiarized itself with this case");  *End of Rd. Tr.*, 2002 WL 242464, at *3 (client would suffer "great prejudice" if law firm was disqualified because the case is "complex," the law firm "invested a substantial amount of time and effort," and disqualification would "delay th[e] case"); *Elonex*, 142 F. Supp. 2d at 584  ("in light of [law firm]'s knowledge of the case, it is certain that [client] will be prejudiced if it has to retain new counsel.").

The Bankruptcy Court's exercise of its discretion is further supported by its finding – based on "unrefuted testimony" and the operation of an ethical screen – that "any confidential or privileged information that Mr. Sneed received in his representation of Century in its reinsurance matters has not and will not be passed along to Sidley's restructuring team."  (Ruling at 12; *see also id*. at 11 ("Mr. Sneed has not passed on any information he received in the course of his representation of Century in the reinsurance matters."); *id*. at 14 ("I am comfortable that no privileged information that Sidley obtained in its work for Century can or will be used in this bankruptcy case in any way.")).  This was "not … surprising given the nature of large firms with

specialized departments."  (*Id*. at 12).

Century does not identify any evidence suggesting this conclusion was incorrect.

Century suggests that some unspecified "information-sharing" "might have occurred" prior to Haynes and Boone being appointed. (D.I. 23 at 46-47; *see also id*. at 46 ("there is [a] risk that confidential, privileged, or disadvantageous material could have already been disclosed")). But such speculation does not show a clear error in the Bankruptcy Court's factual finding.

Century asserts that the rules of professional conduct "presume[] that such information-sharing occurs," and thus Sidley cannot "cure" a violation of Rules 1.7 or 1.9 through use of an ethical screen, because it did not implement one in a timely fashion.  (*See* D.I. 23 at 23, 25-26, 44-46).  I think this argument misses the point.  Neither Sidley nor the Bankruptcy Court rely on the ethical screen erected by Sidley to "cure" violations of Rules 1.7 or 1.9.  Rather, noting expressly that a "retroactive ethical screen may not work for purposes of violations of the Rules of Professional conduct," the Bankruptcy Court found as a factual matter that the screen provided further assurance that confidential information regarding Century's reinsurance matters had not been and, importantly, would not be shared with the Sidley restructuring team.  (Ruling at 12).  Based on the foregoing, Sidley's prior representation of Century has had and will have no impact on the integrity of the bankruptcy proceeding or Century's interactions with BSA.

In circumstances like these, the dispute is best left to another forum – here, the ongoing arbitration proceeding.  *See, e.g., United States v. Prevezon Holdings Ltd.*, 839 F.3d 227, 241 (2d Cir. 2016) ("[D]isqualification is called for only where an attorney's conduct tends to taint the underlying trial, because federal and state disciplinary mechanisms suffice for other ethical violations." ),  As the Bankruptcy Court observed, the parties' agreement provides that if they are unable to resolve a dispute related to a matter handled by Sidley, "the <u>sole</u> means for redressing that dispute shall be an arbitration."  (Ruling at 2). "Century is pursuing this remedy."  (*Id.*)

Accordingly, the Bankruptcy Court concluded, "Violations of the professional rules of conduct will be addressed in that forum, which was Chubb's chosen forum." (*Id*. at 14).

The Bankruptcy Court's decision rests on the clear application of well-established law to its undisputed factual findings. Like the Bankruptcy Court, I need not reach the question of whether Sidley's representation of BSA in fact violated Sidley's ethical obligations to Century under Rules 1.7 and 1.9.

## V.      CONCLUSION

The Court finds no abuse of discretion in the Bankruptcy Court's determination that Sidley met the requirements of section 327, which is not intended to vindicate the rights of third parties. I affirm the retention of Sidley without deciding whether any ethical violation occurred. As the Bankruptcy Court observed, "Permitting Sidley to continue to work on the BSA bankruptcy case does not leave Chubb without further remedies." (Ruling at 14). I agree that this is fundamentally a dispute implicating the parties' contractual and ethical duties — not the Bankruptcy Code — that is currently being addressed in the pending arbitration, which the parties agreed would be the sole forum for resolving their disputes.

For the reasons set forth herein, the Retention Order is affirmed. A separate order will be entered.